# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-928V
Filed: January 7, 2026

|  |  |
|---|---|
| AYON WEN-WALDRON,<br><br>    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Special Master Horner |

*Leah VaSahnja Durant*, *Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Madelyn Weeks, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On July 30, 2020, Ayon Wen-Waldron ("petitioner") filed a petition on behalf of her deceased husband, Darryl Waldron ("decedent"), under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). (ECF No. 1) Petitioner alleged that the decedent suffered Guillain-Barre Syndrome ("GBS") within the time period set forth in the Vaccine Injury Table relative to an influenza ("flu") vaccination that he received on December 5, 2017. Petition at 1. On October 21, 2024, the parties filed a joint stipulation, which I adopted as my decision awarding compensation on the same day. (ECF No. 53.)

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

On April 22, 2025, petitioner filed a motion for attorneys' fees and costs. (ECF No. 58.) ("Fees App.") Petitioner requests the following compensation: attorneys' fees and costs in the amount of $91,345.06, representing $69,993.40 in fees and $21,351.66 in costs. (Fees App. at 1.) Pursuant to General Order No. 9, petitioner warrants she incurred $3,558.21 in costs in pursuit of this litigation. (*Id.* at 2.) On March 13, 2025, respondent filed a response to petitioners' motion. (ECF No. 59.) Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." (*Id.* at 1.) Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." (*Id.* at 2.) Respondent "respectfully requests that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs." (*Id.* at 4.) In a footnote, respondent notes that petitioner's personally incurred costs were wholly for the administration the decedent's estate, and concluded on May 3, 2018, before the earliest billing in this case. (*Id.* at 1, n. 1. Petitioner filed her reply on May 2, 2025, arguing that establishing the decedents estate was required by the Vaccine Act prior to filing the petition. (ECF No. 60.)

This matter is now ripe for consideration.

## I.    Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 894-95. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the

burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). When determining the relevant fee reduction, special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

### a. Hourly Rates

Petitioner requests the following hourly rates for the work of her counsel:  for Ms. Leah V. Durant ("LVD"), $377.00 per hour for work performed in 2018, $380.00 per hour for work performed in 2019, $395.00 per hour for work performed in 2020, $420.00 for work performed in 2021, $441.00 for work performed in 2022, $463.00 per hour for work performed in 2023, $486.00 per hour for work performed in 2024, and $550.00 per hour for work performed in 2025; for Ms. Summer Abel  ("SA"), $260.00 per hour for work performed in 2020; for Mr. Mike Milmoe ("MM"), $509.00 per hour for work performed in 2021, $525.00 per hour for work performed in 2022, $553.00 per hour for work performed in 2023, and $584.00 per hour for work performed in 2024; for Mr. Glen MacLeod ("GM"), $525.00 per hour for work performed in 2022, and $553.00 per hour for work performed in 2023; for Mr. Christopher Williams ("CW"), $358.00 per hour for work performed in 2023, $376.00 per hour for work performed in 2024; for Mateo Forero-Norena ("MF"), $385.00 per hour for work performed in 2024; and for Ms. Elizabeth Vitt, $475.00 per hour for work performed in 2024.

The hourly rates requested by attorneys Leah Durant, Glen MacLeod, Mike Milmoe, and their supporting paralegals through the end of 2024, are reasonable and consistent with our prior determinations and will therefore be adopted. However, the proposed hourly rate of $475.00 for 2024, billed by Ms. Vitt, and the rate of $550.00 for 2025 time billed by Ms. Durant require further evaluation and adjustment.

Ms. Durant was previously awarded the *lesser* rate of $530.00 for work performed in 2025. *See Jackman* v. *Sec'y of Health & Human Servs.,* No. 23-1749, 2025 WL 2169814 (Fed. Cl. Spec. Mstr. June 24, 2025). Additionally, Ms. Vitt was previously awarded the *lesser* rate of $430.00 for work performed in 2024. *See Toothman* v. *Sec'y of Health & Human Servs.,* No. 22-207, 2025 WL 2522838 (Fed. Cl. Spec. Mstr. July 29, 2025). I find no reason to deviate from such reasoned determinations and it otherwise is not the practice of OSM to adjust prior rate determinations upward in later cases within

3

the same year. See *Jefferson* v. *Sec'y of Health & Human Servs.*, No. 19-1882V, 2023 WL 387051 (Fed. Cl. Spec. Mstr. Jan. 9, 2023).  Accordingly, I hereby reduce Ms. Durant's rate for work performed in 2025, and Ms. Vitt's rates for work performed in 2024, to be consistent with the respective aforementioned decisions. Application of the foregoing reduces the amount of fees to be awarded by **$83.50**.[3]

### b.  Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

I have reviewed the submitted billing records, and the billed hours are largely reasonable. However, counsel consistently billed entries that included filing documents. Additionally, the billing entries frequently displayed block billing. Examples include the following billing entries: on July 30, 2020, Ms. Durant billed 2.5 hours to "Analyze chart and records and review medical report. Draft and file Petition for Compensation;" on August 15, 2022, Mr. MacLeod billed 3.5 hours to "Complete research. Review and prepare evidence. Review and finalize report. Evaluate literature. Draft and file Notice of Filing. File expert report;" and on October 25, 2023, Mr. Williams billed 2.5 hours to "Review and prepare evidence. Review medical literature and finalize report. Draft and file Notice of Filing. File supplemental expert report." (Fees App. Ex. 1 at 4, 10, 12.)

It is well established in the Vaccine Program that billing for some administrative tasks (*e.g.*, filing), even at a paralegal rate, is not permitted. *See, e.g., Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"). Additionally, block-billing, or billing large amounts of time without sufficient detail as to which tasks were performed and their duration, is disfavored. *See Broekelschen v. Sec'y of Health & Human Servs.*, 2008 WL 5456319, at *4-5 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block-billing); *see also Jeffries v. Sec'y of Health & Human Servs.*, 2006 WL 3903710, at *9 (Fed Cl. Spec. Mstr. Dec. 15, 2006). Indeed, the Vaccine Program's Guidelines for Practice state, "Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."

---

[3] The amount is calculated as follows: for Ms. Durant, ($550.00 - $530.00 = $20.00 x 3.50 hrs.) = **$70.00**; and for Ms. Vitt, ($475.00 - $430.00 = $45.00 x 0.3 hrs.) = **$13.50**.

Accordingly, the undersigned finds that a five percent reduction to the attorneys' fees is necessary to achieve "rough justice." *See Florence v. Sec'y of Health & Human Servs.*, No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). This results in an additional reduction of **$3,495.50**.[4] Petitioner is therefore awarded final attorneys' fees of $66,414.40.

### c. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $21,351.66 in attorneys' costs. Fees App. Ex. 2 at 2.  These costs are comprised of acquisition of medical records, and review of those records by Ms. Kate Coleman, and postage. *See id.* This amount also includes the expert services of David M. Simpson, MD. Dr. Simpson's invoices require additional discussion.

Petitioner requests reimbursement for expert services provided by Dr. David Simpson for 28.75 hours at a rate of $700.00 per hour, totaling $20,125.00. (Fees App. Ex. 2 at 12-14.) In his response to petitioner's motion for attorneys' fees and costs, respondent states, "[t]o the extent petitioner is requesting higher expert hourly rates than what has typically been awarded in the past, respondent submits that the Court should reserve the highest rates for the most qualified experts opining on the most complex medical issues." (ECF No 59 at 4.) Respondent states that "[t]he The Court should continue to make case-by-case determinations about a reasonable hourly rate, based upon the work performed, and any revised expert hourly rate ceiling should reflect the unique character of the Vaccine Program." (*Id.* at 5.) Respondent "urges that the hourly rates paid to experts who appear on behalf of respondent ($375.00) be considered when determining an appropriate hourly rate . . . ." and asserts that "[t]his is direct evidence of a rate that experts in all medical specialties have accepted for Vaccine Program cases, and is highly relevant as to the appropriate rate here." *Id.* Petitioner's reply to respondent focused on petitioner's law firm's qualifications, rather than Dr. Simpson's specific qualifications. (*See* ECF No. 60 at 2-3.)

While Dr. Simpson's requested rate of $700.00 per hour is not necessarily objectionable, it exceeds what he has been previously awarded for similar work performed in 2022, and petitioner provided no rationale for an increase in 2023. Dr. Simpson has consistently been awarded $500.00 per hour for his work in the Vaccine Program performed in 2022 and earlier. *See Goode v. Sec'y of Health & Human Servs.*, No. 21-1307V, 2024 WL 5378634 (Fed. Cl. Spec. Mstr. Nov. 22, 2024); *Velasquez v. Sec'y of Health & Human Servs.*, No. 19-1703V, 2024 WL 2186367 (Fed. Cl. Spec. Mstr. Apr. 16, 2024); *Neuenschwander v. Sec'y of Health & Human Servs.*, No. 18-1245V, 2023 WL 1948633 (Fed. Cl. Spec. Mstr. Jan. 18, 2024); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 19-729V, 2022 WL 16584904 (Fed. Cl. Spec. Mstr. Sept. 22, 2022). Accordingly, I will reduce Dr. Simpson's rate from $700.00 to $500.00 per

---

[4] The amount is calculated as follows: $69,993.40 - $83.50 = $69,909.90 x 5% = **$3,495.50**.

hour for the expert services performed in 2022 and 2023, in this case. This results in a reduction of **$5,750.00**.[5]

The remainder of the attorneys' costs are typical administrative costs incurred in the Vaccine Program. Petitioner is therefore awarded final attorneys' costs of $15,601.66.

### d. Petitioner's Personal Costs

Petitioner states that personal costs were incurred in the amount of $3,558.21. Fees App. Ex. 2 at 17. Respondent argues that petitioner has not presented adequate proof that the estate costs incurred personally by petitioner were incurred in a proceeding on the petition.  (ECF No. 59, p. 1, n.1.)  Citing *Bennett v. Sec'y of Health & Human Services*, 15-65V, 2017 WL 3816094, at *4 (Fed. Cl. Spec. Mstr. Aug. 7, 2017), petitioner argues that the costs of establishing the decedent's estate were an essential prerequisite to proceeding on the petition because petitioner was obligated to file documentation of her representative capacity in order to act as petitioner.  (ECF No. 60, p. 3.)  Importantly, however, the *Bennett* special master distinguished between the costs of opening an estate to obtain representative capacity, from costs associated with administering the estate and participating in collateral state court proceedings, finding the latter type of costs not to be compensable because they were not incurred "but for" the petition.  2017 WL 3816094, at *3-4; *see also Greer v. Sec'y of Health & Human Servs.*, No. 16-1345V, 2018 WL 1125695 (Fed. Cl. Spec. Mstr. Jan. 17, 2018) (adopting the reasoning of *Bennett*).  As the *Greer* special master explained in greater depth, the general rule in the program has otherwise been that estate fees not incurred during the pendency of the petition are not compensable.  2018 WL 1125695, at *8; *see also Mol v. Sec'y of Health & Human Servs.*, 50 Fed. Cl. 588, 591 (2001).  However, both the *Greer* and *Bennet* special masters effectively acknowledged that the need to have representative capacity to pursue a petition provides at least some basis for concluding that the vaccine petition can be a but for cause of estate fees, even if those costs predated the filing of the petition.  2018 WL 1125695, at *7 (explaining that "I do find weight in the affidavit filed by the estate attorney, stating that the estate was opened for the sole purpose of filing the vaccine claim.")  (*Id.*)

I do not disagree with the reasoning in either *Bennett* or *Greer*; however, the circumstances of this case are different. Here, the estate attorney was first contacted on January 4, 2018, a little over two weeks following the decedent's death. (ECF No. 58-2, p. 18; Ex. 4.)  The billing records reflect that the estate attorneys worked with petitioner on various issues relating to effectuating the decedent's will, resolving issues pertaining to beneficiary designations on retirement accounts, and inventorying the estate, including valuation of two automobiles.  (*Id.* at 18-22.)  The will was submitted to probate in February of 2018, at which time petitioner's letters testamentary were issued. (*Id.* at 20; Ex. 3.)  The last available billing entry indicates that the estate attorneys contacted petitioner about concluding the estate on May 3, 2018. (ECF No. 58-2, p. 22.)  Petitioner's

---

[5] The amount is calculated as follows: ($700 - $500) x 28.75 hrs. = **$5,750.00**.

counsel for the instant matter did not meet with petitioner until August of 2018, about three months after the estate attorneys felt the estate was ready to be closed. (ECF No. 58-1, p. 1.)  Neither petitioner, nor any of the estate attorneys, have provided any additional statements regarding why the estate was initially set up or why these costs were incurred.  In fact, even petitioner's briefing of the instant motion only seeks to imply, without explicitly stating, that the estate was, in actuality, set up in furtherance of the petition. (ECF No. 60.) Without more, the billing records offer no indication that the vaccine petition was a but for cause of petitioner's estate expenses and, in fact, strongly suggest that petitioner had other, unrelated, reasons for opening the decedent's estate. Accordingly, on this record the estate costs are not compensable.

## II.    Conclusion

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), I have reviewed the billing records and costs in this case and finds that petitioner's request for fees and costs is reasonable. I find it reasonable to compensate petitioner and her counsel as follows: **a lump sum in the amount of $82,016.06, representing reimbursement for petitioner's attorneys' fees and costs, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[6]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[6] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).

7